## JOHN R. FLOWER v. BALTIMORE ETC. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF DELAWARE COUNTY.

Argued February 10, 1890—Decided February 24, 1890.

Where, upon the trial of an issue to assess damages to land arising from the construction of a railroad, the jury empaneled are sent to view the land, the purpose of the view is to enable them the better to understand the testimony, and not that they should make up their verdict from the view in disregard of the evidence adduced.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOL-LUM and MITCHELL, JJ.

No. 383 January Term 1889, Sup. Ct.; court below, No. 40 December Term 1887, C. P.

On September 20, 1887, the court below directed the framing

of an issue between John R. Flower, as plaintiff, and the Baltimore and Philadelphia Railroad Company, as defendant, in pursuance of an appeal by the latter from the report of viewers previously appointed to assess damages to the plaintiff for certain of his land taken by the defendant in the construction of its railroad.

At the trial of the issue on September 26, 1888, the jury empaneled were sent to view the land affected. Being again brought into court, the plaintiff called eight witnesses, who testified to their experience in neighboring real estate transactions, and knowledge of values, and placed his damages at sums varying from $9,000 to $14,000. The defendant called nine witnesses, similarly qualified to judge of values, who placed plaintiff's damages at from $1,225 to $3,500.

The court, CLAYTON, P. J., charged the jury in part as follows:

It is a most remarkable discrepancy in the testimony, gentlemen, of men who profess to know what the value of property such as this is. It is such a discrepancy as may cause you to doubt whether they do know sufficiently what they are testifying to. There is such a remarkable difference, that it is calculated to cast reflection upon the judgment or ability of the witnesses, and there ought to be a nearer approximation to the true value, among men who do know the value of the property. There certainly ought to be more harmony. In other words, what I mean to say is this, that it is quite clear that some of the witnesses do not know what they profess to know, or there would not be such a discrepancy in their estimates. Who they are I cannot say. It will be for you to say which of these witnesses are best entitled to belief.

As I before remarked, the discrepancy is from $1,225 to $14,000. [You have seen the land, but you are not to take it for granted that you can, because you have seen it, be witnesses, or render a verdict upon your own judgment from that view. The law does not permit that. You are only permitted to view the land, that you may the better understand the testimony. The value of the land you are to ascertain from the witnesses. Whatever assistance a view may have been to you in adopting a value, or in giving credit to the witnesses, you

are entitled to look at and consider. You should, of course, as I before remarked, consider all the surrounding circumstances; the opportunities the witnesses may have had of knowing the matters of which they testify; and, after you have weighed all the evidence, aided by your own view of the premises, you are to give the plaintiff just, full and fair compensation for the lands this railroad company has taken, and for the injury to the remaining ground, if you find it injured.] [1] . . . . .

The jury returned a verdict in favor of the plaintiff for $9,900, including interest. A rule for a new trial having been argued, on February 11, 1889, the following opinion was filed:

While charging the jury upon the question of damages, and the rule by which they were to ascertain them, the following language was used: "You have seen the land, but you are not to take it for granted that you can, because you have seen it, become witnesses, or render a verdict upon your own judgment from that view. The law does not permit that. You are only permitted to view the land, that you may the better understand the testimony. The value of the land you are to ascertain from the witnesses. Whatever assistance a view may have been to you, in adopting a value, or in giving credence to the witnesses, you are entitled to look at and consider. You should consider all the surrounding circumstances; the opportunities the witnesses may have had of knowing the matters of which they testify, and, after you have duly weighed all the evidence, aided by your own view of the premises, you are to give the plaintiff just, full and fair compensation," etc.

To this part of the charge the defendant took a general exception without specifying the grounds or calling the attention of the court to any authorities. He now produces two authorities, one of which seems to be in conflict with a part of the above recited charge. A casual reading of the opinion of the Supreme Court in the case of Hartman v. Railroad Co., 22 W. N. 84, would seem to affirm the broad doctrine that a jury, sent by the court to view the locus in quo, may make themselves general witnesses in the case, and render a verdict wholly upon what they have seen as viewers, without any other evidence in the case. I cannot believe that such was the intention of the

Opinion of Court below.

Supreme Court in affirming the lower court in that case. It very often, I have no doubt, becomes absolutely necessary for the Supreme Court to take a broad and liberal view of the language used by the court below, knowing as they do from their own experience when acting as nisi prius judges, that the lower court has not the same time or opportunities to weigh the words used in an impromptu charge. But few charges would stand a close criticism or a strict application of legal rules.

If the law, as announced in the case cited, is to have the broad interpretation contended for, what becomes of the preliminary question asked of every witness, to test his competency to give the value of the land taken, before and after the location of the road? If a jury of carpenters, shoemakers and tailors, simply because they have been permitted by the court to look at the ground that they might thereby be better able to understand the witnesses, are, by that unfortunate act of the court, to become general witnesses, and from their own judgment, formed alone from their view, to fix the value of a tract of land at a time when they had not seen it, it must be worse than folly to subject every other witness to a strict examination as to his knowledge of values and experience in the market rates of real estate.

What the court meant in Hartman v. Railroad Co. was, that in all questions touching the locus in quo and upon which all witnesses who had simply seen the land could testify from what they had seen, the jury might act from their own view. This is undoubtedly the law. To perfectly comprehend the question it must be divided. First, upon questions concerning only the visible situation of the land, the viewers may act upon what they have seen. Second, upon questions of value, at different times, requiring expert witnesses, the jury cannot act wholly upon their own view, but may construe and weigh the testimony, assisted by their view. This I take to be the correct view of the law.

But is not the whole question one for the discretion of the court? The law has provided a way for the selection of a jury of view. That mode was not adopted in this case, but an appeal was made to the discretion of the court to permit the jury to view the premises. The request was granted, but the jury were instructed to go with the sheriff and simply look at the

ground.  I am of opinion that the power, given by the act of assembly in such cases, to make all necessary and proper orders, gave the court power to order the view, and to restrict the jury as to the effect the view was to have upon them.

Judgment having been entered on the verdict, the defendant took this appeal, assigning for error the portion of the charge embraced in [ ] [1]

*Mr. W. B. Broomall*, for the appellant.

Counsel cited: Hartman v. Railroad Co., 22 W. N. 84.

*Mr. J. B. Hannum*, for the appellee, was not heard.

PER CURIAM:

There is but a single assignment of error in this case, and that is to the charge of the court.  It appears that the jury viewed the premises in dispute, and were subsequently instructed by the court that they could not " render a verdict upon their own judgment from that view," but that " after you have weighed all the evidence, aided by your own view of the premises, you are to give the plaintiff just, full, and fair compensation for the lands this railroad company has taken, and for the injury to the remaining ground if you find it injured." The learned judge further said: " You are only permitted to view the land, that you may the better understand the testimony.  The value of the land you are to ascertain from the witnesses."

We see no error in this.  The jurors were sworn to render a true verdict according to the evidence.  It was never intended that the view of the jury should be substituted for the evidence, and that they should make up their verdict from the view in disregard thereof.  The object of the view is, as was correctly said by the learned judge, to enable them the better to understand the testimony; to weigh conflicting testimony, and, thus aided, to arrive at a sound and just conclusion.  Controlled by these principles, the view of a jury may often be of great service in such cases.

                                        Judgment affirmed.