# Roberts, Appellant, *v.* Philadelphia.

*Municipalities — Eminent domain — Widening and regrading streets—Damages—Expert testimony—Cross examination—Proof of other sales—Charge of court—Inspection by jury.*

1. In the trial of an appeal from the award of a road jury assessing damages to the plaintiff's property occasioned by the widening and regrading of a street, it is wholly indefensible to allow witnesses for the plaintiff, who have given their opinion as to value, to be cross-examined as to the prices at which other properties had been sold in the same neighborhood in recent years, and the prices at which other properties which were not sold were held by the owners.

2. It is admissible on cross-examination of a witness to inquire whether he knew of certain sales made of properties in the neighborhood only because the value of the opinion he has expressed depends in a large degree upon his familiarity with ruling prices. To introduce the prices, however, at which the properties were sold is to suggest to the jury a comparison which they are unable to make in order to determine what credit they are to give the witness: Rea v. Pittsburgh, &c., R. R. Co., 229 Pa. 106, followed.

3. In such case it is error for the court to charge the jury in such terms as to indicate that, having made inspection of the premises, and observed the purposes for which the land could be used, whether it was farm land or was ripe for improvement as city property, they might use their own judgment as to these matters and disregard the testimony in the case. It was never intended that the view of the jury should be substituted for the evidence, and that they should make up their verdict from the view in disregard thereof.

POTTER and MOSCHZISKER, JJ., dissent.

Argued Jan. 10, 1913.  Appeal, No. 372, Jan. T., 1912,

by plaintiff, from judgment of C. P. No. 2, Philadelphia
Co., Dec. T., 1910, No. 3919, on verdict for plaintiff in
case of Jesse W. Roberts v. City of Philadelphia. Be-
fore FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART
and MOSCHZISKER, JJ.  Reversed.

Appeal from award of jury of view assessing damages
to a property owner caused by the widening and change
of grade of a city street.  Before STAPLES, P. J., specially
presiding.

The facts are stated in the opinion of the Supreme
Court.

The jury rendered a verdict in favor of the plaintiff
for $4,065.00, upon which judgment was subsequently
entered.  Plaintiff appealed.

*Errors assigned* were various rulings on evidence and
instructions to the jury.

*Henry W. Scarborough,* for appellant, cited: Davis v.
Railroad Co., 215 Pa. 581; Rea v. Railroad Co., 229 Pa.
106; Geissinger v. Hellertown Boro., 133 Pa. 522;
Brindle v. Adams, 33 Legal Int. 322; New Orleans v.
Manfre, 111 La. 927 (35 So. Repr. 981) ; Everitt v. Rail-
road Co., 59 Ia. 243 (13 N. W. Repr. 109) ; Chandler v.
Jamaica Pond Aqueduct Corp., 122 Mass. 305; Hunt v.
Boston, 152 Mass. 168 (25 N. E. Repr. 82) ; May v.
Boston, 158 Mass. 21 (32 N. E. Repr. 902) ; Hoffman v.
Railroad Co., 143 Pa. 503; Flower v. Railroad Co., 132
Pa. 524.

*James Gay Gordon, Jr.,* Asst. City Solicitor, with him
*O. Charles Brodersen* and *Edwin O. Lewis,* Asst. City
Solicitor, and *Michael J. Ryan,* City Solicitor, for appel-
lee, cited: Schonhardt v. Penna. R. R. Co., 216 Pa. 224;
East Penna. R. R. Co. v. Hiester, 40 Pa. 53; Becker v.
Philadelphia & Reading R. R. Co., 177 Pa. 252; Henkel
v. Terminal R. R. Co., 213 Pa. 485; Rea v. Pittsburgh,

Etc., R. R. Co., 229 Pa. 106; Brown v. Scranton, 231 Pa. 593.

OPINION BY MR. JUSTICE STEWART, February 24, 1913:
This case does not present a single fact which differentiates it from the general class to which it properly belongs, and yet it will be found most exceptional with respect to the result reached. It was an appeal from the award of a jury of view in a condemnation proceeding, and the only question to be determined was the amount of damage the owner was entitled to recover. In widening and regrading Castor avenue the city had appropriated between two and three acres of plaintiff's land, and it was claimed that incidentally the market value of the remainder of the property had been seriously impaired by reason of the increased elevation of the surface of the street. The plaintiff called seven witnesses to support his claim. All testified to large impairment in market value as a result of the city's improvement, the lowest estimate given by any of them being $32,000 and the highest $46,000.00. The defendant called no witnesses. The case was submitted to the jury, and the verdict returned was for $4,065.00. We express no opinion as to the sufficiency of the verdict to afford just compensation to the plaintiff. It may or may not be sufficient. With that question we have no concern; but this appeal makes it our concern to inquire as to how this most unusual result, a verdict directly in the face of the only evidence in the case, was reached. The error of the trial judge complained of in the first, second and third assignments, the only error properly assigned, will not in itself explain the result reached, though it was evidently not without its share of contribution. These assignments complain of the overruling of plaintiff's objections in the cross-examination to certain questions put to plaintiff's witnesses, who in their testimony in chief had given their estimate of the market value of plaintiff's land before and after the city's work of improve-

ment. It was inquired, on cross-examination, of several of these witnesses as to the prices certain properties in the same neighborhood had been sold for in recent years, and the prices at which other properties not sold were held by the owners. This was wholly indefensible. Nothing in the way of cross-examination can be suggested so well calculated to mislead, and any truth-speaking verdict following such an investigation could only be attributed to chance or accident. It could aid the jury nothing in determining how much consideration to give the opinion by the witness expressed as to the difference in value of plaintiff's property before and after the city's improvement, to have them informed as to the prices at which other properties in the neighborhood had been sold, for the reason that the jury could be in no position to judge as to the comparative value of the respective properties; nor could they know that the sales that had been made indicated the fair market value of the properties except as informed as to the terms, conditions and circumstances under which they had been sold. It is admissible on cross-examination of a witness to inquire whether he knew of certain sales made of properties in the neighborhood, only because the value of the opinion he has expressed depends in a large degree upon his familiarity with ruling prices. Except as he have such knowledge he is not qualified to testify; the greater that knowledge the better is he qualified to speak, and the greater the weight of his opinion. To introduce the prices, however, at which the properties sold is to suggest to the jury a comparison which they are unable to make in order to determine what credit they are to give the witness. No warrant can be found in any of our cases for such practice. This matter has so recently been reviewed in Rea v. Pittsburgh, &c., R. R. Co., 229 Pa. 106, in an opinion by our Brother MOSCHZISKER, that further discussion is unnecessary. The fundamental objection to such testimony as stated in Pittsburgh, Etc., R. R. Co. v. Rose, 74 Pa. 362, is that it would necessarily

lead to the investigation of collateral issues as numerous as the sales.  The first, second and third assignments are sustained.

The remaining assignments relate to the instructions given by the court in its general charge.  Inasmuch as no exception was taken to the charge, these assignments are dismissed; but since the matters therein complained of must have largely contributed to the strange result a word of comment may avoid repetition of the error here committed on the retrial of the case.  The appropriation by the city was something less than three acres out of a tract of about sixty acres.  At the time of the appropriation the tract was unimproved ground, and was used for farming purposes.  The testimony was that the section of the city in which it was located was rapidly growing, that this particular property was ripe for development into city building lots, and had a largely increased market value by reason of this fact.  There was entire concurrence of view among the witnesses called, seven of them, each having qualified himself to speak as an expert, that such consideration would influence the general buyer in the open market, and each witness based his own estimate of depreciation, apart from the value of the land actually taken, on the interference the city appropriation would cause with the proper and suitable development of the property along the line indicated as the probable use for which it was made available.  The defendant offered no testimony to the contrary.  With respect to this feature of the case the trial judge charged as follows: "Now, that, gentlemen, is the very important question for you to consider in this case.  In the first place, is their estimate of the value of the property correct, or approximately correct?  You have been there and you have seen this property.  We think that it may be concluded from the testimony that, as it lies, it has the appearance of being a farm.  You were there and you saw it.  What are the reasonable uses to which it can be put?  How did it appear to you?

Did it appear to you that it was farm land? If so, what did you see with reference to the neighborhood and as to the other property thereabouts? Was the only land about it farm land? Did it show any appearance of having been improved for the uses of building purposes, or the march of improvement of a city? Was it within your power to view the surrounding country, and to see how near to it the improvements of the city had come? What were the probabilities of its being ready to be developed and put into city lots? Or, not confining it to city lots, but to uses that property can be developed that are within the city limits, and show signs of improvements, if there are any present? That you should consider. You had your eyes there to see for yourselves, and, notwithstanding the testimony of the expert witnesses, if you, from your view of that property, determine that it was simply farm land, and that there was nothing surrounding it, or nothing present, which would warrant the conclusion on your part that it was well developed, or that it could be used for other purposes, then we say that you may consider it simply as farm land; not, however, disregarding the testimony of the experts, but taking that testimony in connection with what you saw yourselves." The jury could only have understood from this instruction that having seen the premises for themselves they were at liberty to substitute what they there saw for the evidence in the case, and "while not disregarding the testimony of the experts," they were free to find that the property had no market value except as farm land, notwithstanding every witness called had testified to a greatly increased market value in addition, and this without anything to the contrary. The verdict shows conclusively that they did so understand it. In Flower v. Railroad Co., 132 Pa. 524, where the question was as to the purposes to be served by having the jury view the premises this court said: "The jurors were sworn to render a true verdict according to the evidence. It was never intended that the view

of the jury should be substituted for the evidence, and that they should make up their verdict from the view in disregard thereof. The object of the view is, as was correctly said by the learned judge, to enable them the better to understand the testimony; to weigh conflicting testimony, and, thus aided, to arrive at a sound and just conclusion." In Hoffman v. Railroad Company, 145 Pa. 503, a case where the jury had viewed the premises, we said, "The vice of the charge is in contrasting the opinion of the jury with that of the whole body of witnesses in a collective sense, and that would be error......Of course, in one sense it is true that the jury is not bound by the opinions of witnesses on such questions, that is of some witnesses, as where extravagant and unreasonable estimates are given. But there are in all cases the estimates of other witnesses of a very different kind; and among these, and especially where there has been a view, it is not only the right but the duty of the jury to discriminate, and to form the best judgment they can as to the real amount of the damages. This will doubtless involve the rejection of some or much of the testimony, and that is within the right of the jury; but yet some of the language of the charge seems to authorize the substitution by the jury of their own opinion for that of the witnesses regarded in a mass." Because of the error here indicated the judgment was reversed. In the present case the only question was, had plaintiff's property any value beside that attached to it for farming purposes. Seven witnesses, qualified as experts, testified that it had, and not a single witness was called to gainsay anything they had testified to, and yet it was submitted to the jury to contrast the opinion formed by them from a view of the premises with that of the whole body of these witnesses, and adopt their own opinion if they chose. Clearly, in this case, the calling of witnesses might well have been dispensed with. The true rule in such cases is that the jury may resort to the knowledge acquired by a view of the premises only for the purposes of under-

standing the testimony of the witnesses and of determining the relative weight of conflicting testimony as to the value of the property. Here there was no conflicting testimony as to the one element on which plaintiff's demand rested.

The judgment is reversed with a venire facias de novo.

DISSENTING OPINION BY MR. JUSTICE MOSCHZISKER, February 24, 1913:

I dissent from so much of the opinion as deals with the charge of the court below.

MR. JUSTICE POTTER joins in above dissent.