Avins *v.* Commonwealth, Appellant.

Argued October 7, 1954. Before STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry M. Jones*, with him *Thomas C. Evans*, *Phil H. Lewis*, Deputy Attorney General and *Frank F. Truscott*, Attorney General, for appellant.

*Glenn C. Jones*, for appellees.

OPINION BY MR. JUSTICE JONES November 8, 1954:

The Commonwealth appeals from a judgment in favor of the plaintiffs for damages to their property due to a condemnation of a portion of it in connection with a State highway improvement in the Twentieth Ward of the City of Pittsburgh. The judgment was entered on an award made by the court below to which the case was tried without a jury. The Commonwealth contends that the judgment is excessive, that the learned court below committed reversible error in the method it pursued in making its finding as to the damages resulting from the taking and that a new trial should have been granted.

The plaintiffs' property consisted of a tract of unimproved land, a very considerable portion of which

was steep hillside. The condemnation actually took for the highway improvement approximately one-half of the tract. It is conceded, or at least not seriously disputed, that the portion of the property remaining after the condemnation is worth little or nothing because of its precipitous topography.

The only evidence in the case as to the damages suffered by the plaintiffs as a result of the appropriation was the testimony of three witnesses who qualified as experts on real estate values in the locality. One of these witnesses was produced by the property owners and the other two by the Commonwealth. As unfortunately happens all too frequently in cases of this nature, the opinions of the experts as to the value of the property taken, injured or destroyed varied over a truly incomprehensible range. The plaintiffs' expert gave as his opinion that the damage was $132,000, while the Commonwealth's witnesses placed it at $7,800 and $6,750, respectively. The Board of View had awarded the plaintiffs $16,500 from which award both the property owners and the Commonwealth appealed. At an earlier trial of the issue raised by the appeals the jury returned a verdict for the plaintiffs of $13,000. A new trial was granted in the expressed belief that evidence as to the purchase price of the property (concerning which one of the owners, who had testified to a patently exorbitant valuation, was cross-examined) had been used by the jury "as bearing on question of value rather than on question of credibility". It was "For such reason [that] the court en banc [was] of the opinion that the ends of justice require[d] the award of a new trial." It is noteworthy, however, that the new trial was not granted on the ground of inadequacy of the verdict which was one of the reasons assigned by the plaintiffs in support of their motion.

Upon the retrial, with which we are here concerned, the learned trial judge, being faced with the same wide disparity in the witnesses' estimates of the damages occasioned the plaintiffs, frankly stated in his adjudication that he rejected the opinions of the experts and, having himself viewed the premises, applied instead "good, sound, common horse sense", thereby finding a verdict for the plaintiffs of $37,500 whereon the judgment, here appealed, was entered. We fully appreciate the predicament confronting the court below when called upon to determine an issue of fact as to property valuation on opinion evidence which, in the case of the one expert in particular, was so glaringly wide of the mark as to be little less than ridiculous by comparison with the ultimate finding of the court itself. Yet, we cannot approve the court's rejecting in toto the only evidence of values in the case and then proceeding to make its own independent appraisal of the damages on the basis of its personal viewings of the property.

A jury may not disregard the evidence as to property values in a condemnation proceeding and substitute its own ideas. In *Roberts v. Philadelphia*, 239 Pa. 339, 344, 86 A. 926, we held to be reversible error an instruction by the court from which "The jury could only have understood . . . that having seen the premises for themselves they were at liberty to substitute what they there saw for the evidence in the case . . . ." See, also, *Knight v. Allegheny County*, 371 Pa. 484, 92 A. 2d 225, and *Hoffman v. Bloomsburg Etc. R. Co.*, 143 Pa. 503, 520, 22 A. 823. And, what a jury thus may not do, a court as the fact-finder without a jury likewise may not do. The limitation upon the triers of facts in condemnation cases with respect to the permissible source of their information is the same whether they be "judges, jurors, viewers, boards or commissions":

*Cowan v. Bunting Glider Co.,* 159 Pa. Superior Ct. 573, 575, 49 A. 2d 270.

Nor did the views had by the court below in the instant case, to which it alludes in its adjudication, qualify it to make its own independent appraisal of the damages to the plaintiffs' property due to the condemnation. The purpose of a view is to enable the trier of the facts more thoroughly to comprehend and weigh the testimony: *Harton's Estate,* 331 Pa. 507, 514, 1 A. 2d 292; *Wadsworth v. Manufacturer's Water Company,* 256 Pa. 106, 118-119, 100 A. 577; *Roberts v. Philadelphia,* supra, at pp. 344-345; *Hoffman v. Bloomsburg Etc. R. Co.,* supra, at p. 520. All of these cases cited with approval *Flower v. Baltimore Etc. R. Co.,* 132 Pa. 524, 528, 19 A. 274, where it was said that "It was never intended that the view of the jury should be substituted for the evidence, and that they should make up their verdict from the view in disregard thereof." The *Roberts* case, supra, further stated that "The true rule in such cases is that the jury may resort to the knowledge acquired by a view of the premises only for the purposes of understanding the testimony of the witnesses and of determining the relative weight of conflicting testimony as to the value of the property."

It follows that the learned court below erred in the method it followed in determining the amount of the property damage suffered by the plaintiffs. In so stating, we are not to be understood as even implying that the court was bound to accept as verity the estimate of the damage as testified to by any one of the expert witnesses. Expert testimony from its very nature is not proof of a fact. It is never more than opinion. What Mr. Justice DREW said in *Ray v. Philadelphia,* 344 Pa. 439, 442, 25 A. 2d 145, is presently pertinent: "In land-damage cases it is usual to call a number of [expert]

witnesses on each side to prove market value. . . .
They give their opinions, and while those on each side
are frequently in substantial agreement, it is seldom
they each offer the same valuation. This very fact, the
constant disagreement as to market value, shows how
unfair it would be to bind anyone by the opinion of
any such witness." But, some testimony of witnesses
must form the basis of the fact-finder's reasoning to a
conclusion with respect to the value of the land taken.
The *Ray* case, supra, cited and relied on by the court
below, did not hold otherwise. What was there decided
was that the condemnor was not bound by the opinion
of its own expert as to the value of the property ap-
propriated. In *Hoffman v. Bloomsburg Etc. R. Co.*,
supra, while recognizing that ". . . in one sense it is
true that the jury is not bound by the opinions of wit-
nesses on such questions; that is, of some witnesses, as
where extravagant and unreasonable estimates are
given . . ., it is not only the right, but the duty of the
jury to discriminate, and to form the best judgment
they can as to the real amount of the damages" with-
out, however, substituting their own opinion for that
of the witnesses.

Where the court below apparently fell into error
was in misunderstanding the import of what was said
in *Leaf v. Pennsylvania Co.*, 268 Pa. 579, 584, 112 A.
243. In that case, the expert testimony as to the dam-
ages for the land taken ranged from $4,000 to $160,000.
The trial judge, in submitting the case to the jury,
said,—"When it comes to the question of damages, in
a case of this kind, you should use above everything
else your good common sense, your horse sense, if I may
use that term." In passing upon this instruction, on
appeal, Mr. Justice KEPHART, speaking for this court,
said,—"The wide disparity of figures called for the
experience of common sense. The jury were not told

to use their own judgment as to value, and disregard the evidence submitted; they were told to apply to the information thus received their good common sense as men, and not to be misled by any extraordinary ideas of value that may have been submitted by the witnesses in the case."

Likewise here, the common sense exercised by the court should have been in its appraisal of the testimony; it should have looked for any possible enlightenment touching the elements to be taken into consideration in determining the fair market value of the property and the reasonableness or unreasonableness of the opinions of the expert witnesses. For example, the owners' expert avowedly arrived at his opinion as to the value of the property exclusively by applying an arbitrary price of $100 per front foot for the whole of the property's 1320 odd feet in length—a means of appraisal that both of the Commonwealth's experts flatly rejected as being wholly inapplicable to a property such as was under consideration. What was credible in the circumstances as to the proper basis of appraisal? A view of the property revealed that, for its entire 1320 odd foot length, it was separated from the adjacent public highway by a creek 12 feet wide and, while the tract consisted of a more or less level shelf of varying depth of 100 to 200 feet going back from the creek, beyond that, it was a steep and unusable hillside. If, after endeavoring to determine the value of the property before and after the taking on the basis of the testimony, the court found itself unable to come to a conclusion, its proper recourse was to order a new trial. Indeed, "the great discrepancy between the market value as fixed by the respective witnesses of the parties" was one of the motivating factors for the earlier grant of a new trial in this case.

The Commonwealth further contends that the trial court erred in refusing to admit in evidence, for the purpose of impeaching the integrity of the plaintiffs' claim, the deed of conveyance by which the title to the property involved passed to the plaintiffs or their privies four years prior to the condemnation for a consideration of $6,000. Whether the deed should be admitted in evidence at the retrial will be a question for the trial court to determine in the light of the record before it. It is not possible now to know what the evidence offered by the plaintiffs at the new trial will be or the amount of their claim. Moreover, any question of remoteness, which can depend upon changed conditions as well as elapsed time, will be a matter for the trial court to pass upon in the exercise of its sound discretion. In *Berkley v. Jeannette*, 373 Pa. 376, 381, 96 A. 2d 118, we indicated the circumstances under which the claimants' deed for the property involved in a condemnation proceeding may be admitted in evidence or inquired into at a trial of the issue as to the amount of the damages suffered.

Judgment reversed and a new trial awarded.