Lobozzo *v.* Adam Eidemiller, Inc., Appellant.

Argued October 10, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Thomas L. Anderson,* for appellant.

*Sanford S. Finder,* with him *Michael E. Kusturiss,* for appellees.

OPINION BY MR. JUSTICE POMEROY, March 20, 1970:

Between November 30 and December 11, 1964, the defendant, Adam Eidemiller, Inc. (Eidemiller), a highway construction firm, detonated a considerable number of explosive charges to prepare the roadbed for a section of Interstate Highway No. 79, which it was building in the vicinity of Canonsburg, Pa. under contract with the Commonwealth of Pennsylvania.   Donald Lobozzo and his wife, the plaintiffs (Lobozzo), owned and operated the Canon Food Locker, a combination cold storage plant and grocery store located near the site of the blasting.   On several occasions during this period, Lobozzo felt his building tremble and observed numerous cracks appear in its walls.   This action in trespass was brought by Lobozzo alleging that vibrations emanating from Eidemiller's blasting had damaged the building.   A jury trial resulted in a verdict for Lobozzo in the sum of $25,000, upon which judgment was entered after denial of Eidemiller's posttrial motions.   This appeal followed.

The action was tried on the theory of strict liability for the damage if caused by blasting, and no proof of negligence on Eidemiller's part was offered. The first issue presented is whether this approach was correct in the circumstances of this case. While recognizing that in *Federoff v. Harrison Construction Co.*, 362 Pa. 181, 66 A. 2d 817 (1949), we adopted the rule of liability without fault for blasting damage, set forth in Section 519 of the *Restatement of Torts*,[1] Eidemiller contends that the rule of that case should not be applied to this one because its blasting was done in conjunction with a public rather than a private project. Specifically, he argues that the Section 521 exception to the Section 519 strict liability rule for "activity carried on in pursuance of a public duty imposed on the actor as a public officer or employee", should be extended to apply to an independent contractor working on a public project.

The Superior Court rejected this same argument in *Laventhol v. A. DiSandro Construction Co.*, 173 Pa. Superior Ct. 522, 98 A. 2d 422 (1953), a case involving blasting in connection with the laying of sewers for the City of Philadelphia. Judge (now Chief Judge) WRIGHT, writing for the court, reasoned that, "[t]he 'public duty' imposed upon a public officer or employe differs from the duty voluntarily assumed by a successful bidder for a contract." (173 Pa. Superior Ct. at 526-27). See also *Mazza v. Berlanti Construction Co.*, 206 Pa. Superior Ct. 505, 509, 214 A. 2d 257 (1965); cf. *Baier et ux. v. Glen Alden Coal Company*, 332 Pa. 561, 3 A. 2d 349 (1939).

---

[1] Section 519 of the *Restatement of Torts* provides: "Except as stated in §§521-4, one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent harm." In *Federoff*, we held, "[t]here is no doubt that such blasting is an ultrahazardous activity. . ." (362 Pa. at 183).

We believe this distinction is sound. Section 521 and comment $a^2$ thereto appear to recognize that governmental bodies must, on occasion, engage in ultrahazardous activity for the public benefit and that a public officer or employee has the duty of conducting such activity thrust upon him by virtue of his position. Because the governmental unit may be either immune from suit or immune from liability for harm caused by such activity, the full burden of absolute liability would fall squarely upon the individual public servant, absent the Section 521 exception. Yet, the individual public officer or employee can neither control the degree of hazard he will create nor dictate the compensation he will receive for the performance of his required duties.

The same cannot be said of an independent contractor. He may balance the risk of loss from damage caused against the cost of insulating himself from such loss, and regulate his contract bid accordingly. We hold that Section 521 was not intended to apply to independent contractors of public bodies, and that the rule of liability without fault enunciated by Section 519 of the *Restatement* should be applied to damage caused by ultrahazardous activity (such as blasting) undertaken by an independent contractor on a public as well as a private project. This holding is in accord with the well reasoned decisions from a number of other jurisdictions,[3] and with the views of two eminent scholars

---

[2] Comment *a* states, in relevant part: "A public official a part of whose duties is to make or store high explosives in large quantities is not subject to the absolute liability imposed by the rule stated in §519. . ."

[3] Although none of the cases specifically rejects the Section 521 exception argument, the following reach the same result: *Whitman Hotel Corp. v. Elliott & Watrous Engineering Co.*, 137 Conn. 562, 79 A. 2d 591 (1951) (contract with the state government); *Smith v. Aldridge*, 356 S.W. 2d 532 (Mo. App. 1962); *Whitney v. Ralph Myers Contracting Corp.*, 146 W.Va. 130, 118 S.E. 2d 622 (1961); *Smith v. Lockheed Propulsion Co.*, 247 Cal. App. 2d 744, 56 Cal.

in this field, Harper & James, *The Law of Torts,* Supplement to Vol. 2, at p. 13 (1968).[4]

*Valley Forge Gardens, Inc. v. Morrissey, Inc.,* 385 Pa. 477, 123 A. 2d 888 (1956), relied upon by Eidemiller, does not indicate a contrary result. There the Court held that a highway contractor, working under a contract with the Commonwealth, was not liable for damage caused to the plaintiff's ornamental ponds by erosion of fill placed by the contractor. In the course of so holding the Court observed that, "[i]n every jurisdiction where the question has been passed upon . . ., it has been uniformly held that in the absence of negligence or wilfully tortious conduct on the part of an independent contractor, he *is* not liable for injury to another's property which is caused by the performance of his contract with a governmental instrumentality in accordance with its plans and specifications."

The theory underlying the *Valley Forge Gardens* decision is that the Commonwealth has a privilege to have highways constructed, and that such privilege insulates a contractor who complies with the Commonwealth's plans and specifications from liability for damage caused by such construction, unless the contractor performs his work tortiously. The important point of distinction between that case and the present one, and the reason that the rule set forth there is not controlling here, is that the damage in the case at bar was caused by ultrahazardous activity whereas in *Valley*

Rptr. 128 (1967) (vibration from jet engine testing). *Contra, Pumphrey v. J. A. Jones Construction Co.,* 250 Iowa 559, 94 N.W. 2d 737 (1959) (Restatement was not considered).

[4] "Some states, moreover, have adopted a restrictive rule which renders . . . Sections 519 and 520 of the *Restatement* inapplicable to one area of its greatest potential modern utility, namely, abnormally dangerous activities performed in carrying out contracts with a governmental unit . . . Fortunately this restrictive rule is repudiated by the weight of authority."

*Forge Gardens* it was not. Blasting, an ultrahazardous activity, is, of course, necessary in many construction projects, public as well as private. But if blasting, even though carefully performed, causes damage, it by that fact becomes "tortious" and actionable, and one whose property is injured or destroyed may have recovery. Thus under our present holding the insulation rule of *Valley Forge Gardens* applies in the absence of negligence, willfully tortious conduct, or activities, such as blasting, for which liability without fault is imposed.

The second issue presented is whether the trial court erroneously instructed the jury concerning the use they were entitled to make of knowledge acquired at their view of the damaged premises. The judge instructed the jury: "If you find that any witness stated falsely any material fact in the case you are at liberty to disregard the whole of his testimony if you want to. Whatever you decide of course must be based upon what you have found out in the Court Room and on your view of the premises. You are entitled to consider everything that you observed while on the view in your decision." Eidemiller contends that under this instruction, to which we think defendant took adequate, if inartistic, exception, the jury was free to disregard all the testimony in the case and base their verdict solely on the view.

The cases in which this Court has considered the use the jury may make of information obtained at a view share two attributes: almost all of them are eminent domain cases[5] and none is recent. Neither of these factors, however, detracts either from the soundness of their reasoning or their applicability to this

---

[5] Since 1964, the view of the jury in eminent domain cases has, by statute, been "evidentiary". Eminent Domain Code, Act of June 22, 1964, P. L. 84, Art. 7, §703, 26 P.S. §1-703.

case for here, as in eminent domain cases, the information obtained by the jury concerned the physical aspects of the property allegedly damaged. In its argument that the instruction given was error, Eidemiller relies upon statements such as that made in *Flower v. Baltimore Railroad Co.*, 132 Pa. 524, 528, 19 Atl. 274 (1890) : "It was never intended that the view of the jury should be substituted for the evidence, and that they should make up their verdict from the view in disregard thereof. The object of the view is, as was correctly said by the learned judge, to enable them the better to understand the testimony; to weigh conflicting testimony, and, thus aided, to arrive at a sound and just conclusion." See also *Hoffman v. Bloomsbury Railroad Co.*, 143 Pa. 503, 520, 22 Atl. 823 (1891) ; *Roberts v. Philadelphia*, 239 Pa. 339, 344, 86 Atl. 926 (1913).

On the other hand, the Court has recognized that "[a] view may sometimes be of the highest importance where there is a conflict of testimony. It may enable the jurors to see on which side the truth lies. And if the witnesses on the one side or the other have testified to a state of facts which exists only in their imagination, as to the location of the property, the manner in which it is cut by the road, the character of the improvements, or any other physical fact bearing upon the case, *they surely cannot be expected to ignore the evidence of their senses and give weight to testimony which their view shows to be false. . . . The true rule in such cases is believed to be that the jury in estimating the damages shall consider the testimony as given by the witnesses in connection with the facts as they appeared upon the view; and upon the whole case, as thus presented, ascertain [the damages]. . ."* *Gorgas v. Philadelphia etc. Railroad Co.*, 144 Pa. 1, 13, 22 Atl. 715 (1891) (Emphasis supplied.) See also *Wadsworth v. Manufacturer's Water Co.*, 256 Pa. 106, 117-19, 100

Atl. 577 (1917); *Avins v. Commonwealth,* 379 Pa. 202, 205-6, 108 A. 2d 788 (1954); *Shano v. Fifth Av. & High St. Bridge Co.,* 189 Pa. 245, 42 Atl. 128 (1899). In the case last cited the Court stated: "The jurors had examined the property, and from what they saw and knew, as well as from the testimony of witnesses, they were to form their own judgment; the expert testimony was an aid only in enabling them to reach a conclusion." (189 Pa. at 247.) See also 1 Henry, *Pennsylvania Evidence,* §431 at p. 430, n. 78 (1953).

These statements, read together, indicate the proper function of the view. The information obtained thereby is probably the best evidence of the observable, physical facts of the case, but it should not be used by the jury as evidence of intangibles such as the proper valuation of the damage. The jury should not disregard testimony as to the cause of the damage or the cost of repairing it and, applying their own sense of value to the physical facts they have observed, arrive at a verdict. But certainly they may, and indeed should, test the believability of testimony concerning observable, physical facts against the knowledge they gained while on the view, and, if the testimony conflicts with that which they know from their own observation, they cannot be asked to disregard their own knowledge.

We believe that the trial court's instruction was not erroneous when viewed in light of these considerations. While the reference to the function and purpose of the view could well have been more elaborate, it was not misleading when placed in context with admonitions to the jury to consider all the testimony in arriving at a verdict.

The final issue presented is whether the weight of the evidence on the question of proximate cause and damages was sufficient to support the verdict. Where the court below has either granted or denied a new trial on the issue of sufficiency and weight of the evidence,

this Court will not reverse unless there has been a palpable, i.e., clear, abuse of discretion. *Brown v. Mc-Lean Trucking Co.*, 434 Pa. 427, 429, 256 A. 2d 606 (1969). As we said in that case, "[p]alpable abuse occurs, *inter alia,* when the trial judge permits a verdict to stand although it is 'so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail.' [Citations omitted]."

Scrutiny of the record convinces us that the court below committed no such abuse of discretion in refusing a new trial in this case. Essentially, only two issues were presented to the jury: (1) whether the blasting caused the damage, and (2) if so, what was the amount of the damage. On the first issue, two expert witnesses, one testifying for Lobozzo and one for Eidemiller, gave conflicting opinions. The opinion of Eidemiller's witness may have had less weight with the jury after he admitted having often testified in cases of this kind, but both were well-qualified, experienced experts. Eidemiller also introduced considerable testimony to the effect that the vibrations caused by its blasting had not exceeded a subsequently adopted Commonwealth safety standard, but there was no testimony that vibrations even below this standard could not cause damage. Moreover, a number of persons who had been in Lobozzo's building during the blasting testified that they heard the explosions and felt the building tremble.

With regard to the second issue, the amount of the damages, the only testimony introduced was by Lobozzo's witnesses who gave estimates of the cost of repairs. While these estimates may have been somewhat high, Eidemiller introduced no testimony indicating a lower repair cost. We cannot say that the jury was in error in accepting the only evidence presented to them on the amount of damages.

Eidemiller also contends that the proper measure of damages here should be the lower of the cost of repairs or the diminution in the value of the property, citing *Bumbarger v. Walker,* 193 Pa. Superior Ct. 301, 311, 164 A. 2d 144 (1960). That rule is not applicable to this case because the damage to the building here was not permanent. Despite one statement by Mr. Lobozzo on cross-examination that he claimed his building had been permanently damaged, the whole record clearly indicates that he proceeded on the theory that the damage was remediable. Under those circumstances, the correct measure of damages is the cost of repair, unless that cost would exceed the value of the building. *Rabe v. Shoenberger Coal Co.,* 213 Pa. 252, 255-56, 62 Atl. 854 (1906) ; *Jones v. Monroe Electric Co.,* 350 Pa. 539, 544, 39 A. 2d 569 (1944) ; *Romesberg v. Caplan Iron and Steel Co.,* 385 Pa. 36, 38, 122 A. 2d 53 (1956).[6] The court below justifiably concluded that the value of the building exceeded the cost of repair; it, therefore, correctly found the measure of damages to be the cost of such repairs.

We note that in his concurring opinion below, President Judge SWEET expressed his belief that the jury verdict "should have gone the other way," but we also note that he believed that the issues presented were properly for the jury's resolution, and so did not dissent. His opinion highlights the fact that reasonable men could differ in determining the factual issues in this case. We agree that these issues were properly submitted to the jury.

Finding no error below, we affirm the judgment.

[6] The reading given the *Rabe* case by the Court in *Art Club v. Heyman and Goodman,* 325 Pa. 587, 592, 190. Atl. 922 (1937) that for remediable damage to realty, a plaintiff may recover the cost of repairing it or depreciation caused by it, whichever is lower, is erroneous. In *Rabe* the Court unequivocally held that, ". . . the cost of repair or restoration [of remediable damage to realty] is obviously the measure of the damage." 213 Pa. at 256.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The Majority of this Court sustains a verdict for the plaintiffs for damages resulting from blasting by an independent contractor, who was working for the Government under and as required by the plans and specifications of the Commonwealth. The Court reached this result despite the fact (we repeat) that (1) the blasting was done pursuant to the Commonwealth's contract and specifications; and (2) without any proof that the independent contractor was *in any way negligent* or *at any time departed from* the highest degree of care; and (3) in spite of the clear and controlling language to the contrary in *Valley Forge Gardens, Inc.*, hereinafter quoted.

It is the general rule that with the exception of the Government or a Governmental Agency, one who carries on an ultrahazardous activity, such as blasting, has an *absolute* liability for damages resulting from that ultrahazardous activity. See *Federoff et ux. v. Harrison Construction Company*, 362 Pa. 181, 66 A. 2d 817, and Section 519 of the Restatement of Torts. This general rule applies when the contractor whose blasting operation caused the damage was employed by a private party to perform a contract which necessitated blasting. However, there is also a well-recognized exception, namely, that neither the Government nor a Governmental Agency, nor a contractor performing work for the Government or for a Governmental Agency in accordance with its plans and specifications, is liable for damages caused by his ultrahazardous activity *in the absence of negligence or a willful tortious action on his part.* There is no liability on the part of the Government because of the principle of Governmental or Sovereign immunity, and this doctrine has been wisely extended to cover a contractor who performs work for the Government under a contract according to plans and specifications mandated by the

Government or its Agency. *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 385 Pa. 477, 123 A. 2d 888; Section 521 of the Restatement of Torts.

In *Valley Forge Gardens, Inc.*, the Court said (pages 481-482): "In every jurisdiction in this Country where the question has been passed upon (and that includes the Supreme Court of the United States, other Federal courts and courts of approximately half of the States), it has been uniformly held that *in the absence of negligence or wilfully tortious conduct* on the part of an independent contractor, he is not liable for injury to another's property which is caused by the performance of his contract with a governmental instrumentality in accordance with its plans and specifications. There has not been cited to us, nor has our independent research disclosed, a single case holding to the contrary." (Footnotes excluded.) This language and this test are in practical effect repudiated and annihilated by the Majority.

Probably the persuasive or controlling reason for extending this immunity to independent contractors employed by the Government is that if it were not so extended, bidding on such jobs would be made more difficult and complicated and far more expensive than it already is. This Court pertinently said in *Valley Forge Gardens, Inc.*, 385 Pa., supra (page 484): "The rule could not be otherwise. As recognized by the Supreme Court of Washington in Muskatell v. Queen City Construction Co., 3 Wash. 2d 200, 100 P. 2d 380, 381, if the rule were otherwise, 'the bidding on contracts with a [governmental instrumentality] would be somewhat hazardous, because the contractor could never know what the amount of damages which he might have to pay to abutting property would be.' Also, as stated by the Supreme Court of Appeals of Virginia in Tide-

---

* Italics throughout, ours, unless otherwise noted.

water Construction Corp. v. Manly, 194 Va. 836, 75 S.E. 2d 500, 502,—'The contractor's bid is based upon the theory that the public agency has a legal right to submit its plans and specifications for the work to be performed, and that if he performs the work in accordance with the plans and specifications he will incur no liability in the absence of negligence.' "

It is undisputed in this case that the damage suffered by plaintiffs was not caused by any negligence or intentional or willful wrongdoing on the part of the defendant, and their recovery is predicated solely upon the doctrine of absolute liability without fault for all damages resulting from an ultrahazardous activity.

This is made clear by the Majority's Opinion, which states that the privilege and duty of the Commonwealth to have highways constructed *"insulates* a contractor who complies with the Commonwealth's plans and specifications from liability for damage caused by such construction, *unless the contractor performs his work tortiously. . . .* Blasting, an ultrahazardous activity, is, of course, necessary in many construction projects, public as well as private. *But if blasting, even though carefully performed, causes damage, it by that fact becomes 'tortious' and actionable, and one whose property is injured or destroyed may have recovery.* Thus under our present holding the insulation rule of *Valley Forge Gardens* applies in the absence of negligence, willfully tortious conduct, or activities, such as blasting, for which liability without fault is imposed." In other words, the Court holds that blasting, while it may be wise and often necessary in many Governmental construction projects, is nevertheless *conduct which becomes tortious, not if negligently performed,* but merely and *solely if damage is caused thereby.* This is obviously and clearly an erroneous, unwarranted interpretation of the test and the meaning of tortiousness, and, no matter how disguised, or how camouflaged the

attempted distinction, substitutes "absolute liability without fault" for tortiousness—a self-contradictory non sequitur.

Since the Majority admit that no tortious or negligent blasting was proved, but merely damage without fault, I dissent. I do not find it necessary to discuss the other points raised.