Adkin T. BARRON, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–366.

District of Columbia Court of Appeals.

Argued Jan. 9, 2003.
Decided March 20, 2003.

---

Tracey D. Weaver, Public Defender Service, with whom James Klein and Sandra K. Levick, Public Defender Service, were on the brief, for appellant.

Michael C. Liebman, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Stuart G. Nash, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, REID and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

Appellant, Adkin Barron, was convicted of assault with intent to kill while armed, in violation of D.C.Code §§ 22–401, –4502 (2001), aggravated assault while armed, in violation of D.C.Code §§ 22–404.01, –4502 (2001), possession of a firearm during the commission of a crime of violence, in violation of D.C.Code § 22–4504(b) (2001), carrying a pistol without a license, in violation of D.C.Code § 22–4504(a) (2001), possession of an unregistered firearm, in violation of D.C.Code § 7–2502.01(a) (2001), and unlawful possession of ammunition, in violation of D.C.Code § 7–2506.01 (2001). On appeal Barron alleges: 1) the trial

court abused its discretion by allowing the jury to view appellant's car during jury deliberations, when the car was not in evidence and when the court did not give the jury further instructions regarding the view; 2) the trial court abused its discretion in limiting appellant's cross-examination of a government expert witness; 3) his conviction for carrying a gun without a license violates his Second Amendment right to bear arms; and 4) his conviction for both assault with intent to kill and aggravated assault while armed violate the Double Jeopardy Clause of the Fifth Amendment. Because we find that a jury view is evidence if probative of disputed issues of material fact and that appellant was prejudiced by the court's treatment of the jury view in this case, we reverse Barron's convictions and remand this case for a new trial.

## I.

Appellant and Derrick McCrea grew up in a neighborhood referred to as Barry Farms in Washington, D.C. and were casual acquaintances. Since leaving the neighborhood, their only remaining connection was that Barron's cousin had been killed approximately fourteen years earlier in McCrea's car after McCrea loaned the automobile to him. On June 4, 1999, while both men were visiting friends in Barry Farms, appellant learned that McCrea was in the neighborhood and decided to speak to him about his cousin. However, according to appellant, when he and Tony "Crook" Johnson tried to locate McCrea, they did not see him. Therefore, he, Johnson and another friend, Quartet Smith, left Barry Farms in Barron's car. Johnson was in the backseat.

According to Barron, after leaving Barry Farms and while stopped at a street light, he heard Johnson say, "there he is right there" and then Barron saw Johnson shooting a gun from the front driver's side window of his car. Barron did not know

that Johnson was shooting at McCrea nor did he look to see if anyone had actually been shot. Johnson instructed Barron to drive to a Maryland apartment complex, where Johnson got out of the car. Because Johnson had a gun, Barron complied.

Off-duty police officer, Michael A. Wiggins, witnessed the shooting while in his unmarked car and followed Barron. However, Wiggins did not follow Barron into the complex because he was unarmed and had his daughter in the vehicle. Wiggins, therefore, lost sight of Barron's car for approximately two minutes, while Barron was in the complex. When appellant left the complex, he was chased by police in marked cars and then arrested. Police did not find a gun in the car or around the outside of the apartment complex. After his arrest, Barron told police that Johnson, who had been in the backseat, was the shooter. Police tried unsuccessfully to take prints from the recovered shell casings, but did not fingerprint the backseat.

During appellant's trial, both McCrea and Wiggins testified as eyewitnesses to the shooting. Both identified Barron as the shooter and testified that there was no one in the backseat of the car. During jury deliberations, the jury sent the judge two notes. The first note stated that the jury was deadlocked. The second note stated that they wished to view Barron's car and they wanted further instruction on the concept of reasonable doubt. Defense counsel objected to the jury viewing appellant's car when the car had not been introduced into evidence and without the court instructing the jury that the position of the car's seat could have been moved since the time of the shooting. The court, however, permitted the jury to view the car without additional precautions.

## II.

▮ Barron contends that the trial court erred by allowing the jury to view his car during jury deliberations because: 1) the case had already been submitted to the jury and, 2) the car had not been properly introduced into evidence. Specifically, Barron objects to the trial court's decision to allow the jury view because it was conducted in a manner that violated his Sixth Amendment right to confront the evidence and cross-examine the witnesses against him. We review a trial court's ruling on whether to allow a jury view for abuse of discretion. *Minor v. United States*, 294 A.2d 171, 173 (D.C.1972); *Washington Coca Cola Bottling Works v. Kelly*, 40 A.2d 85, 86 (D.C.1944). A jury view is proper when "an object in question cannot be produced in court because it is immovable or inconvenient" and, therefore, it is necessary for the fact-finder "to go to the object in its place and there observe it." *Dailey v. District of Columbia*, 554 A.2d 339, 340–41 (D.C.1989) (quoting IV WIGMORE ON EVIDENCE § 1162 at 362 (1972 & 1988 Supp.)).

Both Barron's counsel and government counsel informed the trial court that it was problematic for the jury to view the car when it had not yet been introduced into evidence.[1] The court's position, however, was that the car was not evidence and that the request was "nothing more than a juror's request to visit the scene." The court's characterization of a jury view as non-evidence is consistent with the perspective that many courts have historically used to justify jury views without introducing the object of the view as evidence. *See Wright v. Carpenter*, 49 Cal. 607 (Cal.1875) (the jury view is not to be considered evidence) (*repudiated by People v. Milner*, 122 Cal.171, 54 P.833 (Cal.1898) (a jury view is evidence); *State v. Landry*, 29 Mont. 218, 74 P. 418, 421 (1903) (a jury view is for the purpose of "enabl[ing the jury] to understand and apply the evidence").

Historically, the perspective that jury views are not in evidence "rests in large part upon the consideration that facts garnered by the jury from a view are difficult or impossible to embody in the written record, thus rendering review of questions concerning weight or sufficiency of the evidence impracticable."[2] John W. Strong, 2 MCCORMICK ON EVIDENCE § 216, at 29 (5th ed.1999). In those jurisdictions, jurors are typically instructed to use the view as a tool to help evaluate the other evidence presented, rather than as evidence itself. *See Crowe v. State*, 265 Ga. 582, 458 S.E.2d 799, 808–09 (1995) ("the trial court properly instructed the jury that the view was not evidence"); *Schultz v. Bower*, 57 Minn. 493, 59 N.W. 631 (1894) (the view is merely to apply the evidence); *State v. Landry*, 29 Mont. 218, 74 P. 418, 421 (1903) (jury's view is only to "enable them to understand and apply the evidence"); *State v. Nobles*, 106 Ohio App.3d 246, 665 N.E.2d 1137, 1151 (1995) ("The only purpose of [the view] is to help [the jury] understand the evidence as it is presented in the courtroom"); *Ernst v. Broughton*, 213 Or. 253, 324 P.2d 241, 243 (1958) ("Such view is never permitted for the purpose of using it as substantive evidence, but only in order to enable the jury to understand the testimony"); *Avins v. Commonwealth*, 379 Pa. 202, 108 A.2d 788, 790 (1954) ("The purpose of the view is to enable the trier of the facts more thor-

---

1. Appellant also objected to no limiting instruction being given to the jurors.

2. This court rejected this line of reasoning in *Dailey v. District of Columbia*, 554 A.2d 339, 340–41 (D.C.1989) holding that a trial judge in a bench trial was not obligated to videotape a scene view for purposes of appellate review.

oughly to comprehend and weigh the testimony ... the jury may resort to the knowledge acquired by a view of the premises only for the purposes of understanding the testimony of the witnesses"); *Baltimore & O.R. Co., v. Flower*, 132 Pa. 524, 19 A. 274 (1890) (a view merely illustrates the testimony); *Beatty v. Depue*, 78 S.D. 395, 103 N.W.2d 187, 190 (1960) ("While eminent authorities consider knowledge derived from a view as evidence ... this court does not so regard it. However, ... it does enable the trier of facts to more satisfactorily weigh the evidence given in court and is of assistance to him in determining the issues of fact."); *State v. Bernson*, 40 Wash.App. 729, 700 P.2d 758, 767–68 (1985) ("[A] jury view of a crime scene is a means of helping the jury to understand the evidence, and is not itself evidence").

Commentators have largely rejected this position, however, observing that: 1) jurors consider other factors that cannot be reproduced for the appellate court, such as the demeanor of a witness, and 2) jurors are unlikely to assign less importance to jury views than to other types of evidence merely because they are instructed that the view is not evidence.[3] *See* WIGMORE ON EVIDENCE § 1168, at 385; 22 Charles Alan Wright & Kenneth W. Graham Jr., FEDERAL PRACTICE AND PROCEDURE § 5176, at 141 (1978) ("The notion that a view is not 'evidence' has been discredited by the writers, and explicitly rejected by our modern code.") (citations omitted); 2 Joseph McLaughlin, ed., WEINSTEIN'S FEDERAL EVIDENCE § 403.079[4] (2d ed. 1999) ("The modern position is that the view does provide independent evidence.")). Furthermore, the Supreme Court in *Snyder v. Massachusetts*, 291 U.S. 97, 121, 54 S.Ct.

330, 78 L.Ed. 674 (1934), concurred with the view that jurors were unlikely to make the subtle distinction between views as non-evidence and other information as evidence stating that the view's "inevitable effect is that of evidence, no matter what label the judge may choose to give it." *Snyder*, 291 U.S. at 121, 54 S.Ct. 330, *overruled on other grounds, Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). It is primarily for these reasons that most courts now characterize jury views as evidence. *See Lillie v. United States*, 953 F.2d 1188, 1192 (10th Cir. 1992) ("a view should always be considered evidence"); *In re Application to Take Testimony in Criminal Case Outside District*, 102 F.R.D. 521, 524 (E.D.N.Y.1984) ("[a]uthorities now generally agree that the view provides independent evidence"); *Neel v. Mannings, Inc.*, 19 Cal.2d 647, 122 P.2d 576 (1942) ("the knowledge acquired by the [jury view] was independent evidence in the case"); *Chouinard v. Shaw*, 99 N.H. 26, 104 A.2d 522, 523 (1954) ("Information that a jury obtains from a view is evidence which it is authorized to use in reaching a verdict"); *Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.*, 152 W.Va. 549, 165 S.E.2d 113, 119 (1968) ("[T]he jury, upon the view, was authorized and expected to observe all pertinent physical facts apparent on the premise and to consider such facts as evidence along with all other evidence introduced at the trial").

While we recognize that jurors are presumed to follow instructions, we are persuaded that the better jurisprudence is to recognize, as the Supreme Court did in *Snyder*, that despite instruction jurors are likely to have difficulty making the subtle distinction between views as non-evidence and other information as evidence. Evi-

---

**3.** In fact it has been suggested that jurors will assign even more importance to a jury view than to other evidence because "it is an even

more direct and satisfactory source of proof." WIGMORE ON EVIDENCE § 1168.

dence is defined as "something ... that tends to prove or disprove the existence of an alleged fact," BLACK'S LAW DICTIONARY 576 (7th Ed.1999). It is difficult to conceive of a circumstance when a jury view would not meet this definition of evidence. In this case, given the defense raised by appellant and the response of the government in closing, a view of the car clearly had probative value to the jury.[4] Appellant argued at trial that he was not the shooter, but that another individual, who was sitting in the backseat of his car, was the shooter. While the government's evidence pointed to Barron as the shooter, government counsel argued that because there was so little room in the backseat it was unlikely that another individual could have been sitting in the backseat. At that point, if not before, the amount of room in the backseat became an important issue in the case, and thus, information relating to that point had evidentiary value.

In this case, because the trial judge did not consider the jury view to be evidence, he did not reopen the case and appellant was not given the opportunity to address the jury regarding the viewing. Rather the jury was allowed to draw its own independent conclusions without hearing from either side. In *United States v. Hans* 738 F.2d 88 (3d Cir.1984), the trial court similarly allowed the jury, pursuant to its request and over the objection of counsel, to see items that had not been formally introduced into evidence without allowing the parties to make further arguments to the jury. On appeal, the court held that the trial court erred in allowing the jury to view the items because they had not been introduced into evidence. The court con-

cluded further that "[t]he trial judge should have dealt with the request by allowing the government to reopen its case and move [for] the introduction of the [items]." *Id.* at 93. The court's conclusion that reopening the case was the appropriate response was premised in large part on the notion that fairness demanded that the defendant be given the opportunity to dispute the significance of the items. *Id.*

▪ In this case, the trial court had two options: (1) refuse to allow the jury view or (2) reopen the case to allow the introduction of the evidence and any appropriate argument. We agree with the rationale espoused by the court in *Hans* that to allow the jury to view a significant piece of evidence without granting the parties an opportunity to dispute the significance of the evidence is an unfair infringement on the right of the parties to present arguments regarding all of the evidence in the case. Therefore, the trial court erred in allowing the view without reopening the case, so that the parties could argue about the significance of the evidence.[5]

▪ Our inquiry, however, does not end here. We still must decide whether the error was harmless. In *Edwards v. United States*, 785 A.2d 292 (D.C.2001), this court applied the harmless error test first articulated by the Supreme Court in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), to determine whether the fact that evidence may have been erroneously sent to and considered by the jury, but not properly admitted into evidence, was nonetheless harmless. We find that the *Kotteakos*

4. If such a case did arise where a jury view lacked any probative value, a trial court might consider the view as non-evidence. *See Price v. United States*, 14 App. D.C. 391, 405–06 (1899). Furthermore, this decision does not address whether a jury view alone is sufficient evidence to support a verdict.

5. Additionally, although we do not doubt that the judge had the jury brought to the correct vehicle, the procedure was so informal that there is nothing in the record to prove that point.

standard is also the appropriate one to apply in this case.[6] Under *Kotteakos* if: the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos*, 328 U.S. at 764–65, 66 S.Ct. 1239 (internal citation omitted).

■ Despite the language in *Kotteakos* that the court must consider whether the jury was "substantially swayed by the error," the government argues that this court in making such a determination is restricted to considering only the pre-deliberative phase of the trial. The government further argues that if its case against Barron was otherwise so strong that the jury could have decided the verdict without the viewing, we should still affirm. In *Kotteakos*, however, the Supreme Court admonished us to determine whether the judgment was substantially swayed by the error "without stripping the erroneous action from the whole." The Court went further to state that "[t]he inquiry cannot be merely whether there was enough evidence to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had sub-

stantial influence." *Id.* at 765, 66 S.Ct. 1239. Thus, in order to determine whether the error had "substantial influence" we must also consider the jury's actions during deliberations.

■ In *Ford v. United States*, 549 A.2d 1124 (D.C.1988) this court took into consideration the actions of the jury when deciding whether the trial court's failure to allow cross-examination of a witness was harmless error. In that case the court stated:

> [t]he jury seemed far from certain about the true course of events. It sent out a note during deliberation that it was unable to come to a unanimous verdict, asked for reinstruction on reasonable doubt, sent out a request indicating it may have considered the possibility of another assailant, and eventually acquitted appellant on three of the four counts.

*Ford*, 549 A.2d at 1127. Similarly, in this case, despite the strength of the government's case, the jury appeared to be still undecided about whether someone else might have committed the shooting. Since it is undisputed that the shooting originated from appellant's car, it is logical to infer that the jury was still questioning whether someone else could have actually fired the shots from the backseat. Finally, though deadlocked before viewing the car, the jury was able to reach a verdict rather quickly after the viewing. As a result of the relationship of the view to Barron's defense and the government's attack on that defense, this court is unable to "say, with assurance that after pondering all that happened without stripping the erroneous action from the whole, that the judgment was substantially swayed" by the erroneous viewing. *Kotteakos*, 328 U.S. at

---

**6.** At oral argument while counsel for Barron articulated a rationale for using the constitutional harmless error test of *Chapman v. State* *of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), he conceded that *Kotteakos* probably applied to this case.

765, 66 S.Ct. 1239. Therefore, the error in this case was not harmless.

■ Accordingly, because we find that the trial court erred in the procedure used to accommodate the jury's request to view appellant's car and the error was not harmless, we reverse appellant's conviction and order a new trial.[7]

*So ordered.*

---

7. Appellant also raises two other issues that can be summarily addressed: 1) whether his conviction for carrying a gun without a license violates his Second Amendment right to bear arms and 2) whether his conviction for assault with intent to kill and aggravated assault while armed violates the Double Jeopardy Clause of the Fifth Amendment. As appellant noted, the first issue is controlled by our decision in *Sandidge v. United States*, 520 A.2d 1057, 1058 (D.C.1987), where this court found that the Second Amendment protects the right of the state to bear arms, not the right of the individual. Therefore, our carrying a pistol without a license statute does not violate the Second Amendment. The second issue is controlled by our opinion in *Nixon v. United States*, 730 A.2d 145, 152 (D.C.1999), where this court found that assault with intent to kill and aggravated assault while armed do not merge.